## LANGER v. BERGER.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

FRAUD—MONEY LENT—EVIDENCE.

By contract, defendant was to advance money to H., who had agreed to erect a building for plaintiff. Plaintiff claimed that, previous to his agreement with H., defendant instructed H. to increase his estimate $2,500, which he did, and plaintiff contracted believing the amount, as increased, necessary for the work. H. and another testified that in the first payment defendant drew a check for $3,500, which plaintiff indorsed and gave to H., and that he returned it to defendant and received back a check for $1,000. Defendant denied such transaction, but failed to produce his check stub book in response to a subpœna. The $3,500 check was cashed by R. Defendant testified that R. paid H. the amount of the check, less $925, which was paid to defendant for attorney's fees, which plaintiff had authorized him to deduct out of the first payment. The agreement between plaintiff and defendant provided that defendant was to pay such attorney's fees. *Held*, that a preponderance of the evidence was for plaintiff, and he was entitled to recover the $2,500, or to be credited therewith.

Appeal from special term, New York county.

Action by Samuel Langer against Morris Berger. From a judgment directing defendant to pay an amount on an account stated, and dismissing the complaint as to equitable relief, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Harold Nathan, for appellant.

Henry M. Goldfogle, for respondent.

O'BRIEN, J. The action was brought to have an account stated (by which it appeared that $327 was due to the plaintiff) re-opened and adjusted, on the ground of fraud on the part of the defendant previous to the stating of the account. The plaintiff owned property on Clinton street and Rutger place, and, being desirous of erecting a building thereon, made an agreement with the defendant by which the latter was to advance money as required for the contractor, and in return was to receive certain mortgages and cash payments. The account stated showed that the defendant claimed:

| | |
|---|---:|
| For cash advanced | $15,400 |
| Interest | 350 |
| Fees, etc. | 1,900 |
|     Total | $17,650 |

And that he had received from the plaintiff:

| | |
|---|---:|
| Mortgage | $16,000 |
| Mortgage | 1,000 |
| Cash | 977 |
|     Total | 17,977 |
|     Leaving a balance due the plaintiff of | $ 327 |

The account was accepted by the plaintiff as true; but the complaint alleges that the plaintiff subsequently discovered that the

defendant, instead of paying the amount named to be paid to the contractor for the plaintiff, had added to the contractor's price a bonus, which he took for himself, representing to the plaintiff that the contractor's price was the larger amount. Equitable relief is asked for this alleged fraud.

It appears that the plaintiff had made a written agreement with one Hoffman, a mason, who was to erect the building, aided by Margowitz, who was to do the carpenter work, by which the plaintiff agreed to pay Hoffman $29,900 for certain work. The plaintiff claims that the defendant had instructed Hoffman to increase his estimate, which was first given to the plaintiff at $27,400, to $29,900, the defendant to have the additional $2,500 as his bonus; that this was done, the plaintiff believing that $29,900 was really necessary for the work; that, in the first payment made, the defendant drew a check for $3,500, which the plaintiff indorsed and gave to Hoffman, who immediately returned it to the defendant, and received back a check for $1,000, the defendant thus securing to himself $2,500 fraudulently. This statement was sworn to by the mason, Hoffman, and the carpenter, Margowitz, but was denied by the defendant, who testified that there was never any $1,000 check drawn. The defendant did not, however, produce his check stub book, although a subpœna duces tecum was served on him to do so; he alleging somewhat incoherently that he could not find the stub book,—that it was lost or destroyed. The check for $3,500 was indorsed by the plaintiff, Hoffman, and the defendant's brother-in-law, Rosenthal, and the last named presented it at the bank for payment. Rosenthal was not produced as a witness, but the defendant testified that Rosenthal paid to Hoffman the amount of the check, less the sum of $925, which was paid to the defendant for lawyer's fees, etc. The defendant further testified that the plaintiff had told him to deduct the fees, and that Hoffman should pay them out of the first payment, the plaintiff having so agreed with Hoffman. This latter agreement is denied, and the original written agreement between the plaintiff and defendant expressly provides that the defendant should pay such expenses, and in fact the stated account includes them. In addition to evidence bearing upon the one question presented on this appeal, as to the right of the plaintiff to recover the sum of $2,500, which he insists the defendant had not advanced to him, but which the defendant claimed he had advanced, there was considerable testimony regarding the other items of the account, which were thus, to a large extent, re-examined. At the close of the case the learned trial judge, relying upon his recollection of the testimony and the credibility of the witnesses produced, and without further taking the case under consideration, then and there decided that the plaintiff was not entitled to any equitable relief. Ordinarily, where such a conclusion is reached upon conflicting testimony, we should not interfere. By a review of the record, it appears reasonably certain that upon the trial, which required a consideration of a number of other items in the account besides the one of $3,500, which included the $2,500 in dispute, no satisfactory determination as to this item was reached; owing, no doubt, to the confusion produced by the

examination in open court of the entire dealings between the parties. Segregating, as we have attempted to do, the testimony bearing directly upon the sum of $2,500, out of which the plaintiff claims to have been defrauded, we think that he has established his contention by a preponderance of evidence. Whatever criticism is to be made upon the credibility of Hoffman, who was a party to the fraud, if it was perpetrated, or of Margowitz, of whom it was suggested that the release of a judgment was to be made as a consideration of his returning from Massachusetts and testifying on the trial, still, their direct and positive testimony, in addition to that given by the plaintiff, confirmed as it is by the written agreement bearing upon the question of the payment of fees, is not satisfactorily met by the denial of the defendant, accompanied as it was by his version of the transaction. From the defendant's own testimony, it would appear that he had destroyed the stub of his check book, and the small memorandum books in which he claimed to have kept his accounts; and this he gave as a reason for not complying with the subpoena duces tecum, requiring him to produce the $3,500 check and the $1,000 check, which, if present, would have conclusively established the plaintiff's contention. It may be that no $1,000 check was given, or that the transaction relating to the first payment of $2,500 did not include, as claimed by the plaintiff, a bonus of $2,500, which the defendant surreptitiously and fraudulently obtained; but the explanation given for the failure to produce either the check stub or the account books was very significant, and necessarily militates against the force of the defendant's denial. In addition, we have the fact conceded that the defendant's check to Hoffman was subsequently indorsed by the defendant's brother-in-law, who drew the cash thereon, instead of having the check go through the bank in the regular course. There was some testimony—particularly that of the defendant's attorney—tending to show that the only money taken by the defendant out of the first payment was about $900, which was to meet lawyer's fees and brokerage; but this statement is met by the written agreement relating to the advances to be made by the defendant, which provides that such charges should be assumed by the defendant.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.